IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Brandon Jones, | ) Civil Action No.:2:15-cv-02439-HMH-MGB |
| Petitioner, | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) **OF MAGISTRATE JUDGE** |
| Larry Cartledge, *Warden*, | ) |
| Respondent. | ) |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on the Respondent's Motion for Summary Judgment, (Dkt. No. 8; *see also* Dkt. No. 9), as well as Petitioner's Motion for Summary Judgment (Dkt. No. 23).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought the instant habeas action on June 2, 2015. (*See* Dkt. No. 1 at 15 of 17; *see also* Dkt. No. 1-3 at 1 of 2.) On August 13, 2015, Respondent filed a Motion for Summary Judgment. (Dkt. No. 8; *see also* Dkt. No. 9.) By order filed August 14, 2015, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 10.) Petitioner filed a Response in Opposition to the Motion for Summary Judgment on or about January 4, 2016. (Dkt. No. 22.) That same day, Petitioner filed a Motion for Summary Judgment. (Dkt. No. 23.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Kershaw Correctional Institution of the South Carolina Department of Corrections ("SCDC"). In December of 2004, the Richland County Grand Jury indicted Petitioner on three counts of criminal sexual conduct with a minor, first degree. (Dkt. No. 9-1 at 123-34 of 134.) Petitioner was represented by Deborah Ahrens, Esquire. (*See* Dkt. No. 9-1 at

1

3 of 134.) On June 27, 2005, Petitioner pled guilty as charged before the Honorable John L. Breeden. (*See* Dkt. No. 9-1 at 3-24 of 134.) Judge Breeden did not sentence Petitioner that day so that a pre-sentence investigation could be conducted. (*See* Dkt. No. 9-1 at 22-23 of 134.) Judge Breeden held Petitioner's sentencing hearing on September 15, 2005; Petitioner was present and, at that time, represented by Lauren H. Mobley, Esquire. (*See* Dkt. No. 9-2.) Judge Breeden sentenced Petitioner to thirty years, concurrent, on each conviction. (*See* Dkt. No. 9-2 at 22-23 of 24.)

Petitioner appealed and was represented by Robert M. Dudek, Esquire, of the South Carolina Commission on Indigent Defense. (*See* Dkt. No. 9-3 at 3-13 of 92.) On November 6, 2006, Mr. Dudek filed a Final *Anders*[1] Brief of Appellant, wherein he raised the following issue:

> Did the trial court abuse its discretion, when it refused appellant's request to include appellant's relevant family background to the pre-sentence investigation report, since this information was important to an accurate appraisal of appellant, and an inaccurate pre-sentencing report was more prejudicial to appellant than no report at all?

(Dkt. No. 9-3 at 6 of 92.) Mr. Dudek also filed a petition to be relieved as counsel. (*Id*. at 13 of 92.) Petitioner filed a *pro se Anders* Response Brief on or about December 27, 2006. (*See* Dkt. No. 9-4.) In his *pro se* brief, Petitioner raised the following issues:

> I. Did the judge abuse his discretion by considering a presentence investigation which, contrary to statute, contained no relevant information concerning Appellant's mental disorder?
>
> II. Was Appellant's right to due process violated when the judge relied upon information at sentencing that should not have been considered?

(Dkt. No. 9-4 at 6 of 47.)

In an unpublished opinion filed on March 13, 2008, the South Carolina Court of Appeals dismissed the appeal and granted counsel's petition to be relieved. (*See* Dkt. No. 9-3 at 92 of 92.) Petitioner filed an untimely petition for rehearing; in a letter dated April 1, 2008, the Clerk of Court for the South Carolina Court of Appeals indicated that he was returning Petitioner's petition for rehearing because "[i]t was not filed within the time limits set by the Court of Appeals." (*See* Dkt.

---

[1]*See Anders v. California*, 386 U.S. 738 (1967).

No. 9-5 at 1 of 26; *see also* Dkt. No. 9-5.) Petitioner filed a *pro se* petition for writ of certiorari in the South Carolina Supreme Court as well as a "Motion to Compel Response to Petition for Writ of Certiorari." (Dkt. No. 9-7.) The South Carolina Supreme Court denied this motion as well as the petition for writ of certiorari on September 5, 2008. (Dkt. No. 9-8.) The matter was remitted to the lower court on September 9, 2008. (Dkt. No. 9-9.)

On August 31, 2009, Petitioner filed an application for post-conviction relief ("PCR"). (Dkt. No. 9-1 at 25-30 of 134.) The following questions and answers appeared in his PCR application:

> 9. State concisely the grounds on which you base your allegation that you are being held in custody unlawfully:
>
>   (a) Ineffective Assistance of Counsel
>
>   (b) Involuntary Guilty Plea
>
> 10. State concisely and in the same order the facts which support each of the grounds set out in (9):
>
>   (a) Ineffective Assistance of Counsel
>
>   1. Plea counsel failed to actively pursue a negotiated sentence as part of a plea bargain, ultimately resulting in applicant's exposure to and the judge's subsequent imposition of the maximum sentence on all original charges.
>
>   2. Plea counsel failed to actively investigate the facts surrounding a defense which could have demonstrated applicant's legal innocence of the charges against him, and at least would have proven mitigating circumstances which would almost certainly have resulted in a reduced sentence.
>
>   3. Sentencing counsel failed to inform applicant of contents of his PSI despite his repeated requests, making it impossible for him to object to its contents at sentencing on the basis of provable inaccuracies. Had applicant been so informed and such objection been made, applicant submits that the judge's sentence would not have been as severe.
>
>   4. After sentencing and prior to a then-imminent reconsideration, sentencing counsel convinced applicant not to withdraw his plea–an action which could have been permissible given the state's breach of two promises made to obtain applicant's guilty plea.

> 5. Sentencing counsel convinced applicant to allow the withdrawal of a motion to reconsider the sentence, in spite of the fact that the maximum sentence had already been imposed on each, the judge had already stated that he did not intend to run the sentences consecutive, and applicant wished to challenge the inaccuracies in the PSI, which at that point had been discovered.
>
> (b) Involuntary Guilty Plea
>
> 1. Applicant did not originally intend to plead guilty. Based on information and belief, the prosecution indicated to plea counsel that, in the event of a guilty plea, certain information would not be made available to the judge at sentencing, and that the prosecution would not make any particular request as to the sentence. Upon the conditions, defendant pleaded guilty. Later, however, the information that supposedly was not to be revealed was discovered in the PSI, and the prosecution requested the "maximum, consecutive sentence" at the sentencing hearing.

(Dkt. No. 9-1 at 26, 30 of 134.)

On February 28, 2011, an evidentiary hearing was held before Judge L. Casey Manning. (Dkt. No. 9-1 at 36-101 of 134.) Petitioner was present and represented by Tommy A. Thomas, Esquire. (*See* Dkt. No. 9-1 at 36 of 134.) In a written order dated February 14, 2012, Judge Manning denied the application for post-conviction relief and dismissed the petition. (Dkt. No. 9-1 at 102-12 of 134.) Petitioner, through his attorney, filed a Motion to Alter or Amend the Judgment. (*See* Dkt. No. 9-1 at 113-14 of 134.) Judge Manning denied that motion in an order dated March 7, 2013. (*See* Dkt. No. 9-1 at 121-22 of 134.)

Petitioner, through his attorney Benjamin John Tripp of the South Carolina Commission on Indigent Defense, filed a Petition for Writ of Certiorari on December 31, 2013. (*See* Dkt. No. 9-11.) Therein, Petitioner raised the following issue:

> Whether Petitioner's plea counsel was ineffective for bargaining with the State that certain uninvestigated, prejudicial statements by Petitioner's former cellmate would not be submitted to the court for consideration at sentencing; where the statements were subsequently included in a presentence investigation report and presented to the court; and where plea counsel failed to object to the report or to withdraw Petitioner's plea.

4

(Dkt. No. 9-11 at 3 of 11.)

In an order dated May 7, 2015, the Supreme Court of South Carolina denied the petition for writ of certiorari. (Dkt. No. 9-13.) The matter was remitted to the lower court on May 26, 2015. (Dkt. No. 9-14.)

Petitioner then filed the instant habeas petition, wherein he raised the following ground for review:

> **GROUND ONE**: Ineffective assistance of counsel.
> **Supporting facts**:
> Plea counsel arranged with the prosecution that, in exchange for a guilty plea, certain uninvestigated, highly prejudicial statements by Petitioner's former cellmate would not be submitted to the court for sentencing. Plea counsel's pre-trial notes, which were read into the record at the PCR hearing, demonstrated that Petitioner's willingness to plead guilty was <u>entirely</u> contingent upon this agreement.
>
> The information which the prosecution had agreed not to submit was nevertheless submitted in Petitioner's PSI. Despite the PSI's availability, and despite repeated requests by Petitioner and his family to review the contents of the PSI, counsel did not secure the PSI, and did not provide it to Petitioner.
>
> The judge, at sentencing, stated explicitly on the record that his admittedly harsh sentence was based on the contents of the PSI. At that time, Petitioner still had not been provided a copy of the PSI.
>
> It was later ruled that the agreement with the prosecution to not submit the informant's uninvestigated statements was invalid. Furthermore, Plea Counsel would not cooperate with Defendant's decision to withdraw his plea after discovering the breach of agreement.
>
> Therefore, for bargaining for an unenforceable agreement upon which the petitioner relied when he pleaded guilty, counsel was ineffective.
> Furthermore, for not providing the requested PSI to petitioner in order that he could review it, object to its contents, and make a timely withdrawal of the plea, counsel was ineffective.

(Dkt. No. 1 at 16 of 33.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that

application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

Respondent seeks summary judgment in the instant case, as does Petitioner. (*See* Dkt. No. 8; Dkt. No. 23; *see also* Dkt. No. 9.) For the reasons set forth herein, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 8) and denying Petitioner's Motion for Summary Judgment (Dkt. No. 23.)

### **A.     Ground One**

Petitioner's grounds for relief–whether interpreted as one ground or multiple grounds–all center upon the pre-sentence investigation report. As noted above, Petitioner pled guilty on June 27, 2005, but sentencing was not held that day because Judge Breeden–at Petitioner's request–ordered a pre-sentencing investigation. (*See* Dkt. No. 9-1 at 3-24 of 134.) A pre-sentencing investigation report was prepared, and Judge Breeden conducted Petitioner's sentencing hearing on September 15, 2005. (*See* Dkt. No. 9-2; *see also* Dkt. No. 9-3 at 71-90 of 92.)

Petitioner contends herein that his counsel was constitutionally ineffective, and his guilty plea was therefore involuntary, because counsel "arranged with the prosecution that, in exchange for a guilty plea, certain uninvestigated, highly prejudicial statements by Petitioner's former cellmate would not be submitted to the court for sentencing." (Dkt. No. 1 at 16 of 33.)[2] Petitioner asserts that

---

[2]Petitioner also appears to assert that counsel was ineffective in failing to provide him with a copy of the pre-sentencing investigation report *before* the sentencing hearing. (*See* Dkt. No. 1 at 16 of 17.) However, such a claim is without merit. As stated in *Hill v. Lockhart*, 474 U.S. 52 (1985), "in order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58. There is no merit to a claim that had counsel provided Petitioner with a copy of the pre-sentencing investigation report before the sentencing hearing, he would not have pleaded guilty but would have insisted on going to trial. Petitioner was well aware at the time of his plea that no pre-sentencing investigation report had yet been prepared; in fact, the proceeding was adjourned so that such an

7

"[t]he information which the prosecution had agreed not to submit was nevertheless submitted" to the sentencing judge in the pre-sentence investigation report. (*Id.*) According to Petitioner, "[i]t was later ruled that the agreement with the prosecution . . . was invalid." (*Id.*) Petitioner asserts that counsel was ineffective in "bargaining for an unenforceable agreement upon which the petitioner relied when he pleaded guilty." (*Id.*)

In addressing this claim, the PCR court noted Petitioner's testimony as follows:

> The Applicant [testified] that he pled guilty because he thought there would be a pre-sentencing investigation. . . . The Applicant explained that he thought the pre-sentencing investigation would be similar to the federal version, in that the facts would be investigated. The Applicant explained that his pod-mate at the detention center ended up writing the Richland County Sheriff with lies and inflammatory comments beyond belief. After the pod-mate letter, the Applicant concluded that it would be best to go to trial. The Applicant explained that the pod-mate letter suggested that the Applicant confessed to the writer and told of twenty (20) to thirty (30) other victims from the Charlotte area. The Applicant explained that he was not a serial predator but was simply a confused kid who made mistakes. The Applicant explained that there were no plea offers so to speak. The Applicant explained that he thought the deal was that if he pled guilty then the pod-mate letter would not be shown to the judge. The Applicant explained that when the plea court asked if there were any promises in exchange for the plea that it would have been awkward to correctly answer the judge because to say yes would reveal that the agreement was to keep the pod-mate letter from him. The Applicant expressed that ultimately, the Chief's letter (paragraph 3) revealed the damaging (and false) information from the pod-mate letter. . . . The Applicant testified that this case comes down to the fact that the State breached the plea agreement because the deal was to keep the pod-mate material from the judge and that did not happen. The Applicant explained that he wanted to withdraw the plea once he found out about the pre-sentencing report details.

(Dkt. No. 9-1 at 106-07 of 134.)

The PCR court found that Petitioner "failed to carry his burden" of establishing ineffective assistance of counsel. (Dkt. No. 9-1 at 108 of 134.) Judge Manning's Order provides, *inter alia*,

---

investigation and report could be completed. In other words, counsel's alleged failure to provide the report to Petitioner before the sentencing hearing had no effect on Petitioner's decision to plead guilty; the guilty plea occurred long before the alleged error occurred. Indeed, Petitioner testified at his PCR hearing that because "one of [the] things [he] had asked for when deciding whether or not to plead guilty was a presentence investigation," "naturally there had to be a break in there where they did the presentence investigation." (Dkt. No. 9-1 at 43 of 134.)

> Beyond his review of the undisputed procedural history, this Court finds Applicant's testimony is not credible. Accordingly, this Court finds Applicant has failed to prove the first prong of the Strickland test–that counsel failed to render reasonably effective assistance under prevailing professional norms. This Court also finds Applicant has failed to prove the second prong of Strickland–that he was prejudiced by counsel's performance.
>
> The plea court explained that the harsh sentence was based on the nature of the crime itself coupled with the Applicant's attempt to flee to Ecuador. (ROA, p. 19–20). Plea counsel objected to the sentencing report, but the plea court did not agree. (ROA, p. 4–6.) The issue of the pre-sentencing report was the issue on appeal[;] it appears to be preserved[; and] the appellate court affirmed the conviction and sentence. *See*, Anders brief. This allegation raises a direct appeal issue that is procedurally barred by S.C. Code Ann. § 17-27-20(b) (2003). Post-conviction relief is not a substitute for a direct appeal. Simmons v. State, 264 S.C. 417, 215 S.E.2d 883 (1974). A post-conviction relief application cannot assert any issues that could have been raised at trial or on direct appeal. Ashley v. State, 260 S.C. 436, 196 S.E.2d 501 (1973). There is no credible evidence to support the notion that the "deal" was to hide something from the plea court. Such a "deal" is not conductive [sic] to the nature of a guilty plea proceeding. "A majority of courts addressing the issue at bar have concluded that neither the defendant nor the government is bound by a plea offer until it is approved by the court." Reed v. Becka, 333 S.C. 676, 686, 511 S.E.2d 396, 402 (Ct. App. 1999). A plea court cannot approve what it does not know. The Applicant's complaint at the time of the plea was simply that the pre-sentencing report was not balanced, in that it did not include interviews with his family, etc. (ROA, p. 4–6; Brief of Appellant, p. 1–9). The Applicant cannot claim on appeal that the pre-sentencing report was incomplete, and then later claim during PCR that i[t] had too much information. The plea court was told "there are no negotiations or recommendations." (Supplemental ROA, p.3). Accordingly, the Applicant has failed to satisfy his burden of proof and demonstrate the counsel's performance was deficient.

(Dkt. No. 9-1 at 109-10 of 134.)[3]

In order to obtain federal habeas relief on Ground One, Petitioner must show that the state court's adjudication of this ground (1) "resulted in a decision that was contrary to, or involved an unreasonable application of" clearly established federal law or (2) "resulted in a decision that was

---

[3]In *Santobello v. New York*, 404 U.S. 257 (1971), the United States Supreme Court held that "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." *Santobello*, 404 U.S. at 499. In the case *sub judice*, the state court concluded that "[t]here [was] no credible evidence . . . that the 'deal' was to hide something from the plea court." (*See* Dkt. No. 9-1 at 109 of 134.)

based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding." 28 U.S.C. § 2254(d). Petitioner has not met that burden. The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id*. at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id*. (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297-99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985).

In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id*. While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

The two-part test enunciated in *Strickland* applies to challenges to guilty pleas based on ineffective assistance of counsel. *See Hill v. Lockhart*, 474 U.S. 52, 58 (1985). "[I]n order to satisfy the 'prejudice' requirement [set forth in *Strickland*], the defendant must show that there is a

reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.

The PCR court in this case found that Petitioner was "not credible" and that "[t]here [was] no credible evidence . . . that the 'deal' was to hide something from the plea court." (*See* Dkt. No. 9-1 at 109 of 134.) Title 28, Section 2254 provides, *inter alia*,

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court ***shall be presumed to be correct***. The applicant shall have the ***burden of rebutting the presumption of correctness by clear and convincing evidence***.

28 U.S.C. § 2254(e)(1) (emphasis added). "[F]or a federal habeas court to overturn a state court's credibility judgments, the state court's error must be stark and clear." *Cagle v. Branker*, 520 F.3d 320, 324 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). As stated in *Winston v. Kelly*, 592 F.3d 535 (4th Cir. 2010),

> The Supreme Court has held that § 2254(d)(2) and § 2254(e)(1) provide independent requirements for review by the federal courts. The sections should not, for instance, be merged to require [the] petitioner to prove that a decision is objectively unreasonable by clear and convincing evidence. Both provisions apply independently to all habeas petitions. To secure habeas relief, petitioner must demonstrate that a state court's [factual] finding . . . was incorrect by clear and convincing evidence, *and* that [it] was objectively unreasonable in light of the record before the court.

*Winston*, 592 F.3d at 554-55 (internal quotation marks and citations omitted).[4]

---

[4]In *Wood v. Allen*, 558 U.S. 290 (2010), the Supreme Court stated,
> As we have observed in related contexts, "[t]he term 'unreasonable' is no doubt difficult to define." *Williams v. Taylor*, 529 U.S. 362, 410, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). It suffices to say, however, that a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance. *Cf. id.*, at 411, 120 S.Ct. 1495. In *Rice* [*v. Collins*, 546 U.S. 333 (2006)], for example, in which we assumed, *arguendo*, that only § 2254(d)(2) and not § 2254(e)(1) applied, 546 U.S., at 339, 126 S.Ct. 969, we rejected the Ninth Circuit's conclusion that a state-court factual determination was unreasonable. We noted that even if "[r]easonable minds reviewing the record might disagree" about the finding in question, "on habeas review that does not suffice to supersede the trial court's . . . determination." *Id.*, at 341–342, 126 S.Ct. 969.

*Wood*, 558 U.S. at 301.

11

In order to thoroughly evaluate Petitioner's claim in the instant § 2254 petition, it is necessary to examine the evidence presented at the PCR hearing. When asked at his PCR hearing whether he and Ms. Ahrens "were working this case up" for a plea or trial, Petitioner testified that "[i]t was never decided until the very very last second." (Dkt. No. 9-1 at 44 of 134.) In addition, Petitioner testified as follows at the PCR hearing:

> Q. All right. And you made a decision to plea and why did you make–or why and how did you make that decision?
>
> A. Okay. There were two things actually and those are the things that actually I was really most pleased with Ms. Ahrens with doing because they–I think they were things that probably fell outside the–normal common realm of a case.
>
> And the first of those things was to get a presentence investigation. That was one of the conditions. I said, I will plead guilty but I would like a presentence investigation.
>
> Now the second thing is a little more involved.
>
> . . .
>
> The second thing is a little more involved. When I was at Alvin S. Glenn Detention Center, I had a cellmate named Elijah Hunter. He and I were cellmates for a time, I don't remember, some number of months. And it's, I guess, important to note that in Delta Pod where I was, there were no lockers or locks or doors or any sort of privacy whatsoever. So, of course, your reading materials are easily accessible.
>
> Mr. Hunter was able to put together a large portion of my case and based on what he was able to put together, he wrote, I believe, the Richland County Sheriff's Department, a letter that contained a lot of very inaccurate and very inflammatory information. That was one of the times when Ms. Ahrens came to see me was to tell me about that.
>
> Q. About your crime?
>
> A. Well, not only about my crime but about my mind state, the things that I was doing and saying in the jail. It was inflammatory and–and inaccurate beyond belief. When she showed me his statement, I went ballistic in this little holding place where we were. I was like, I said, there is no way. I said, this didn't happen, this is not true. I said, this is crazy.

And it was at this point, that was one of the turning points where I said, you know, I think this would be better if we go to trial. . . .

. . .

Q. What in that report was said that wasn't true, what type of information had been provided?

A. The single most damaging thing and the most infuriating thing that he said in his letter to the Richland County Sheriff's Department–and notably he didn't actually allege any specific new crimes, but one of the things that I was most terrified of was he said that I had confessed to him, that I had as many as 20 other victims in the Charlotte/Mecklenburg area. And it seemed to me that well since–the Judge would probably say, well, he's got a bunch of other victims and he hasn't been punished for them, I thought the Judge would certainly take that into consideration in sentencing me. I think probably any reasonable Judge would. So that alone was, you know, very damaging.

Q. Which would have put you [in a] different category?

A. Definitely, as opposed to, you know, a young person [who] made a mistake, was troubled, would have put me into some sort of, you know, serial predator kind of category. And certainly I thought that after reading Elijah's statement, that if a Judge had to read what Elijah wrote, that he would certainly sentence me to more time based on that. . . .

Q. Now you, entered into an agreement–you did plea, so you entered into some sort of agreement?

A. I did. On the day that we went to plead guilty or go to trial or whichever it was going to be, of course I saw Ms. Ahrens in the courtroom. She, you know–she said, listen, they're not really offering you anything. And I said, well, then–remember I said I wasn't going –I wasn't going to plead guilty to the things that they were making up. I said, if it's going to be a guilty plea, it's going to be something that I actually did, not to–not to a bunch of inaccuracies. And she said, but I was able to take care of that.

She said–Ms. Gaddy was the prosecutor for the case and had been for the whole time, is my understanding. And she said, I was able to get Ms.–that she had talked to Ms. Gaddy and my understanding was that, you know, they had done their own investigations and said, you know, basically, whether or not the statement was reliable or true, they were willing to give that and say that if I were willing to plead guilty, that absolutely no part of Elijah Hunter's–of Elijah Hunter's statement would be considered by the Judge at–would not be submitted to him for consideration . . . at sentencing, that I would be sentenced apart from that.

13

(Dkt. No. 9-1 at 45, 47-50 of 134.)[5]

Petitioner acknowledged at his PCR hearing that the plea judge did ask "if anyone had promised [Petitioner] anything in exchange for [his] plea" and that Petitioner did not tell the Judge about the agreement concerning Hunter's statement. (*See* Dkt. No. 9-1 at 63-64 of 134.) Petitioner testified, *inter alia*,

> The thing about it is, granted, they had agreed not to submit Elijah's statement for consideration at sentencing. And the thing about that is, that the Judge says did they promise you anything, how do you say, well, yes, Your Honor, in return for pleading guilty, they promised they wouldn't give you this, you know, very damaging statement from my cellmate because then he already knows what it is, what's being concealed and– . . . so it would pretty much eliminate the whole purpose of–. . . having the agreement.

(Dkt. No. 9-1 at 63-64 of 134.)[6]

Counsel who represented Petitioner at the plea proceeding, Deborah Ahrens, did not testify at Petitioner's PCR hearing. However, Lauren Mobley, the attorney who represented Petitioner at his sentencing proceeding, did testify. When Ms. Mobley was asked whether she agreed for the most part "with what [Petitioner] said as far as [her] involvement," Ms. Mobley stated,

> I do. I mean, I had very limited involvement with the case but when I was reviewing my file, I did see a note from Ms. Ahrens recounting a *discussion* between her and the Solicitor Erin Gaddy noting that there would be a serious problem and the plea wouldn't go through if Elijah Hunter's *testimony* was allowed during the plea proceedings.

(Dkt. No. 9-1 at 82 of 134 (emphasis added).)

---

[5]Petitioner's father also testified at the PCR hearing. (*See* Dkt. No. 9-1 at 78-80 of 134.) Mr. Randy Jones testified that Petitioner told him "that he had reached an agreement with . . . the prosecutor's office that he would plead guilty if, you know, based on the fact that there was no mention of the–Elijah Hunter's statement presented to the Judge." (*Id.* at 80 of 134.) Although Petitioner asserts this testimony corroborates his, what Mr. Jones actually stated was that Petitioner *told* him there was a "deal."(*See* Dkt. No. 22-1 at 3 of 10.)

[6]From a review of the plea colloquy, it does not appear that the plea judge specifically asked *Petitioner* whether anyone had promised Petitioner anything in exchange for the plea. However, as explained herein, both Ms. Gaddy and Ms. Ahrens made representations to the court that there were no negotiations. When Ms. Gaddy made her representation to the court, neither Petitioner nor Ms. Ahrens advised the court differently.

14

Having carefully reviewed the record in this case, as well as the parties' arguments, the undersigned recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 8) and denying Petitioner's Motion for Summary Judgment (Dkt. No. 23). The state court found that there was "no credible evidence . . . that the 'deal' was to hide something from the plea court." (Dkt. No. 9-1 at 109 of 134.) Such a conclusion was not "objectively unreasonable in light of the record before the court." *See Winston*, 592 F.3d at 555. The PCR court found Petitioner's testimony was not credible, and the undersigned discerns no reason to disturb that factual finding.

At Petitioner's plea hearing, the solicitor stated that Petitioner was pleading guilty "to three counts of criminal sexual conduct with a minor in the first degree, and there are **no negotiations or recommendations**." (Dkt. No. 9-1 at 5 of 134 (emphasis added).) Ms. Ahrens' statement at the plea similarly indicated that the "State was not making an offer." (Dkt. No. 9-1 at 16-17 of 134.) Specifically, she stated,

> I represented Mr. Jones since February of this year, spent quite a bit of time with him, **explained to him that the State was not making an offer**.
> **If he pleaded guilty, it would be straight up** to charges that carry up to 30 years. They are most serious offenses. They are violent offenses, and Mr. Jones basically **would never entertain the notion of taking this case to trial**, Your Honor. He has always taken responsibility for what he did. He has always acknowledged the wrongfulness of his actions.

(Dkt. No. 9-1 at 16-17 of 134 (emphasis added).) Pursuant to Rule 3.3 of the South Carolina Rules of Professional Responsibility, both Ms. Gaddy and Ms. Ahrens had an ethical obligation to be candid with the court.[7]

Furthermore, a review of the record in this case reveals that Petitioner was aware of his rights, including the right to trial by jury, the privilege against compulsory self-incrimination, and the right

---

[7]Rule 3.3(a)(1) of the South Carolina Rules of Professional Responsibility provides that a lawyer "shall not knowingly . . . make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer." Comment 2 to this rule specifically states that a lawyer "must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false." S.C. RULES OF PROF'L CONDUCT R. 3.3 cmt.

to confront his accusers; he also had a full understanding of the charges against him and the possible consequences of his plea.[8] (*See* Dkt. No. 9-1 at 6-10 of 134; *see also* Dkt. No. 9-1 at 55 of 134.) After the judge accepted the plea, Petitioner apologized and stated, *inter alia*, "Something happened, an opportunity presented itself that I simply didn't have the constitution to resist, and I'm sorry." (Dkt. No. 9-1 at 18, 21 of 134.) Petitioner was also aware–prior to the time that he entered his plea–that when Ms. Ahrens spoke to Judge Breeden, Judge Breeden "had indicated that if [Petitioner] pled guilty, [Judge Breeden] intended to give [Petitioner] concurrent sentences but substantial ones." (Dkt. No. 9-1 at 55 of 134.) Petitioner testified, however, that Judge Breeden "certainly did not indicate anything about the maximum sentence." (*Id*.)

Finally, although Petitioner asserts that Ms. Mobley's testimony at the PCR hearing supports his position, there are other possible interpretations to her testimony. She testified that she had a note in her file from Ms. Ahrens "recounting a *discussion*" that Ahrens had with Gaddy "noting that there would be a serious problem and the plea wouldn't go through if Elijah Hunter's *testimony* was allowed during the plea proceedings." (Dkt. No. 9-1 at 82 of 134 (emphasis added).) Ms. Mobley did not testify that Ahrens and Gaddy actually reached an agreement.

Petitioner has not shown that the state court's rejection of his claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner shown that the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding. *See* 28 U.S.C. § 2254(d); 28 U.S.C. § 2254(e)(1); *Harrington v. Richter*, 562 U.S. 86, 101 (2011); *Rice v. Collins*, 546 U.S. 333, 341-42 (2006) ("Reasonable minds reviewing the record might disagree about the prosecutor's credibility, but on habeas review that does not suffice to supersede the trial court's credibility

---

[8]*See North Carolina v. Alford,* 400 U.S. 25, 31 (1970); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969); *Meyer v. Branker*, 506 F.3d 358, 366 (4th Cir. 2007).

determination."); *Winston v. Kelly*, 592 F.3d 535, 555 (4th Cir. 2010); *Wilson v. Ozmint*, 352 F.3d 847, 860 (4th Cir. 2003) ("These facts do not compel the credibility determination reached by the state court, but they certainly provide sufficient basis, for purposes of section 2254(d)(2), to support such a determination.").

## B.     Request for Evidentiary Hearing

In his "Return to [Respondent's] Motion for Summary Judgment, Petitioner asserts that "convening a hearing with plea counsel Deborah Ahrens, sentencing counsel Lauren Mobley, and Solicitor Erin Gaddy is the most expedient way to resolve the issue of material fact" upon which his habeas petition turns. (Dkt. No. 22 at 2 of 5.) According to Petitioner, Ms. Ahrens was out of the country at the time of his PCR hearing and was thus "unable to further corroborate the testimony of petitioner's sentencing counsel." (*Id*.) In his Response in Opposition to the Motion for Summary Judgment, Petitioner asserts that since Ms. Ahrens "was entirely unavailable at the time [of the PCR hearing]–despite Petitioner's multiple attempts to locate her–[§ 2254(e)(2)] would permit her testimony to establish or deny the existence of a verbal plea agreement with the prosecution." (Dkt. No. 22-1 at 8 of 10.) Title 28, United States Code, Section 2254(e)(2) states,

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
> (A) the claim relies on--
> > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

If § 2254(e)(2) applies, it does not entitle Petitioner to a hearing. As detailed in the instant Report and Recommendation, the factual predicate of the claim *was* previously discovered; it was Petitioner's central claim at his PCR hearing. Additionally, Ms. Ahrens' testimony concerning an agreement with the prosecution would not be sufficient, by clear and convincing evidence, to establish that but for her alleged ineffectiveness, no reasonable fact finder would have found Petitioner guilty of criminal sexual conduct with a minor, first degree.

However, § 2254(e)(2) only applies if the Petitioner "*failed* to develop the factual basis of a claim in State court proceedings." 28 U.S.C. § 2254(e)(2) (emphasis added). In *Williams v. Taylor*, 529 U.S. 420 (2000), the Supreme Court interpreted § 2254(e)(2) to "require[] lack of diligence or some other fault." *Williams*, 529 U.S. at 434. Here, although Ahrens did not testify at Petitioner's PCR hearing, Petitioner did present evidence concerning this ineffective assistance of counsel claim in state court. The record does not indicate what efforts Petitioner or his counsel undertook to obtain evidence from Ms. Ahrens for the PCR hearing. While Petitioner has presented an explanation to this court as to why Ahrens did not testify at his PCR hearing, he presents no such explanation with respect to the solicitor, Ms. Gaddy. He does, however, recognize that her testimony could easily shed further light on his claim. (*See* Dkt. No. 22 at 2 of 5.) Of course, such a proposition was as true at the time of the PCR hearing as it is today.

Even if Petitioner did not fail to develop the factual basis of the claim in state court, the undersigned recommends against conducting an evidentiary hearing. As stated in *Schriro v. Landrigan*, 550 U.S. 465 (2007), "[b]ecause the deferential standards prescribed by § 2254 control whether to grant habeas relief, a federal court must take into account those standards in deciding whether an evidentiary hearing is appropriate." *Schriro*, 550 U.S. at 474 (citation omitted). Review pursuant to § 2254(d)(2) is "plainly limited to the state-court record." *Cullen v. Pinholster*, 563 U.S. 170, 185 n.7 (2011). And, as detailed herein, the PCR court's adjudication did not result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the

state court proceeding. Even if § 2254(e)(2) does not apply, an evidentiary hearing is not warranted. *See Robinson v. Polk*, 438 F.3d 350, 368 (4th Cir. 2006) (concluding the district court did not abuse its discretion in denying an evidentiary hearing where the petitioner's § 2254 petition "alleged the *same* facts that had been alleged before the [North Carolina Superior] court").

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 8) be GRANTED; that Petitioner's Motion for Summary Judgment (Dkt. No. 23) be DENIED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[9]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

January 29, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[9]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).